**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **DANIEL A. COSMAH, et al.,** | **Case No. 1:25-cv-00597** |
| *Plaintiffs*, | Judge Matthew W. MacFarland |
| vs. | |
| **CLICK N' CLOSE, INC., et al.,** | <u>**AMENDED COMPLAINT**</u> |
| *Defendants*. | |

## <u>FACTUAL ALLEGATIONS</u>

1. Plaintiffs Daniel and Michelle Cosmah, a married couple, are residents of Butler County, Ohio, with an address at 3404 Ward Way, Oxford, OH 45056.

2. Defendant Click N' Close, Inc. ("CNC") is Plaintiffs' mortgagee, with a domestic agent located at 20545 Center Ridge Rd, Rocky River, OH 44116, and doing business in Butler County, OH.

3. Defendant Experian PLC ("Experian"), Defendant TransUnion, LLC ("TransUnion"), and Defendant Equifax Inc. ("Equifax"), are credit reporting agencies (the "CRA Defendants"), with foreign addresses, that regularly conduct business in the State of Ohio, including but not limited to collection, compilation, maintenance and dissemination of consumer credit information concerning Ohio residents.

4. This Court has personal jurisdiction over the CRA Defendants pursuant to R.C. § 2307.382.

5. On December 2, 2024, Plaintiffs paid CNC, via authorized 'auto-draft' by CNC, $3,623.09 in full satisfaction of that month's mortgage obligation.

6. On or around December 3, 2024, Plaintiffs and CNC entered a Trial Modification Plan whereby Plaintiffs were to make reduced payments on their mortgage in monthly payments

for the months of January, February and March of 2025.  A copy of this executed Trial Modification Plan is attached hereto as Exhibit "A."

7. Prior to commencing the trial period, Plaintiffs' monthly mortgage obligation to CNC was $3,623.09, which CNC would 'auto-draft' from Plaintiffs' bank account each month.

8. Pursuant to the Trial Modification Plan, Plaintiffs' monthly payments during the trial period were reduced to $2,845.00 per month, with the first payment in this amount coming due on January 1, 2025.

9. On January 2, 2025, CNC 'auto-drafted' $3,623.09 from Plaintiffs' account, the amount of the original mortgage and not the reduced amount.

10. On January 9, 2025, upon realizing the mistake, CNC attempted to correct it by reversing the erroneous debit of the January 2 payment to Plaintiffs' bank account.

11. On January 13, 2025, CNC 'auto-drafted' the correct amount, $2,845.00, from Plaintiffs' bank account.

12. On January 9, 2025, when CNC reversed the January 2 debit, CNC erroneously linked that reversal of transfer to Plaintiffs' December 2, 2024 mortgage payment, therefore marking that payment as unpaid and past due.

13. CNC did not notify Plaintiffs that it had linked the January refund to the December payment.

14. CNC subsequently reported this false delinquency information to CRA Defendants.

15. On or around March 2025, Plaintiffs were in the process of purchasing an automobile, when they became aware of this adverse and erroneous information on their consumer credit reports.

16. On March 27, 2025, Plaintiffs provided CNC with written notice of the error, including copies of Plaintiffs' bank statements evidencing the mistake, and a request for correction.

17. On or around April 1, 2025, Plaintiff Daniel Cosmah ("Daniel") submitted disputes to Experian regarding the incorrect information furnished by CNC about the December 2024 payment, provided supporting documentation, and requested a review.

18. On April 6, 2025, Experian refused to correct Daniel's consumer credit report and responded to Daniel's dispute, stating that the "information is accurate" and that "the item was not changed."

19. On April 11, 2025, CNC respond to Plaintiffs, stating that "no correction is warranted" and provided an unsatisfactory and cursory explanation for this decision.

20. On May 13, 2025, Plaintiffs submitted disputes to TransUnion regarding the incorrect information furnished by CNC about the December 2024 payment, provided documentation, and requested a review.

21. On May 14, 2025, Plaintiffs submitted disputes to Equifax regarding the incorrect information furnished by CNC about the December 2024 payment, provided documentation, and requested a review.

22. On May 14, 2025, 49 days after Plaintiffs had notified CNC of the error, CNC finally corrected the December 2024 payment and provided a written notice of this change to Plaintiffs.

23. On June 5, 2025, Experian again refused to correct Daniel's consumer credit report, notifying Daniel that "the information is accurate" and that "the item was not changed as a result of our processing your dispute."

24. On information and belief, at some point between June 5, 2025 and the date of this filing, Experian partially corrected the December 2024 payment information on Plaintiffs' consumer credit reports, but Experian never notified Plaintiffs of this action.

25. As of the date of this filing, TransUnion has refused to correct any of the erroneous information on Plaintiffs' consumer credit reports, instead exhibiting a blind reliance on the information furnished by CNC and CNC's representation of its accuracy.

26. As of the date of this filing, all CRA Defendants continue to misreport Plaintiffs' mortgage delinquencies as relating back to the erroneously-reported December 2024 payment, making it appear – to anyone viewing Plaintiffs' consumer credit reports – that Plaintiffs missed their December 2024 payment and did not make that payment until March 2025.

27. As a result of the mistaken information on their consumer credit reports, Plaintiffs' credit scores dropped substantially, and their offered interest rate for an automobile loan increased substantially.

28. Due to the significant decrease in Plaintiffs' credit scores, they have been apprehensive to apply for new credit, and have suffered significant stress, anxiety, and embarrassment.

29. At or around the time of the events described herein, Daniel was asked by his employer-company to be a "guarantor" of company vehicles, which would have constituted a significant promotion for Daniel.

30. Due to the Defendants' conduct and its material adverse impact on Daniel's credit score, Daniel would not have qualified as a "guarantor" on those company vehicles and was forced to decline this promotion opportunity.

**COUNT I:**
**WILLFUL NONCOMPLIANCE WITH**
**THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681n**
**(against all Defendants)**

31. Plaintiffs incorporate all the foregoing allegations as if fully rewritten here.

32. Plaintiffs are "consumers" pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(c).

33. CNC is a "person" pursuant to 15 U.S.C. § 1681a(b).

34. CRA Defendants are all "consumer reporting agencies" pursuant to 15 U.S.C. § 1681a(f).

35. After receiving notice of a dispute with regard to the accuracy of the information CNC furnished to the CRAs, CNC failed to conduct an adequate investigation as required by 15. U.S.C. § 1681s-2(b).

36. CNC's conduct described herein constitutes a willful violation of 15. U.S.C. § 1681s-2(b).

37. Upon receiving direct notification from Plaintiffs concerning their dispute about the information in their consumer credit report, CRA Defendants failed to conduct a reasonable reinvestigation as required by 15. U.S.C. § 1681i(a)(1).

38. Upon receiving relevant documentation conclusively demonstrating the inaccuracy of the furnished information, the CRAs failed to review and consider this documentation as required by 15. U.S.C. § 1681i(a)(4).

39. Experian, after receiving written notice from Daniel concerning the dispute, informed Daniel multiple times that it would not correct its information concerning the December 2024 payment.

40. Experian did not correct its information concerning the December 2024 payment on Daniel's consumer credit report within 30 days of receiving notice of the dispute, nor did Experian ever notify Daniel of any corrections.

41. Plaintiffs notified TransUnion on May 13, 2025, of the disputed information regarding the December 2024 payment and, through the date of this filing, TransUnion has failed to conduct a reasonable investigation or correct the mistake on Plaintiffs' consumer credit reports.

42. All CRA Defendants have been notified of this dispute by Plaintiffs and contemporaneously provided with adequate documentation and information supporting Plaintiffs' contentions, each instance being over 30 days prior to the date of this filing.

43. All three CRA Defendants are reporting Plaintiffs' December 2024 payment as 90+ days delinquent, when in fact the December 2024 payment was timely.

44. The CRA Defendants' conduct described herein constitutes willful violations of 15 U.S.C. § 1681i on the part of each CRA Defendant.

45. As a direct and proximate result of Defendants' willful noncompliance with the FCRA, Plaintiffs have sustained actual damages in an amount to be determined at trial, but in any event exceeding $25,000.00.

46. Pursuant to 15 U.S.C. § 1681n, Plaintiffs are each entitled to statutory damages of not less than $100 and not more than $1,000 per violation, per Defendant, as well as the costs of the action including reasonable attorney's fees.

**COUNT II:**
**NEGLIGENT NONCOMPLIANCE WITH**
**THE FCRA, 15 U.S.C. § 1681o**
**(against all Defendants).**

47. Plaintiffs incorporate all the foregoing allegations as if fully rewritten here.

48. CNC's conduct as described herein constitutes a negligent violation of 15 U.S.C. § 1681s-2(b).

49. The CRA Defendants' conduct as described herein constitutes negligent violations of 15 U.S.C. § 1681i on the part of each CRA Defendant.

50. As a direct and proximate result of Defendants' negligent noncompliance with the FCRA, Plaintiffs have sustained actual damages in an amount to be determined at trial, but in any event exceeding $25,000.00.

<u>**COUNT III:**</u>
<u>**VIOLATION OF THE OHIO RESIDENTIAL MORTGAGE LENDING ACT**</u>
<u>**REVISED CODE § 1322.01 et seq.**</u>
<u>**(against CNC only)**</u>

51. Plaintiffs incorporate all the foregoing allegations as if fully rewritten here.

52. CNC is a registrant, licensee, or person required to be registered or licensed under the Ohio Residential Mortgage Lending Act ("RMLA"), R.C. § 1322.01 et seq.

53. CNC is not a bank, savings bank, trust company, savings and loan association, or credit union, or a subsidiary of any such entity as described in R.C. § 1322.04(A).

54. CNC has repeatedly represented to Plaintiffs that their December 2, 2024, mortgage payment is past due and owing.

55. Plaintiffs fully paid their December 2, 2024, mortgage payment at the time it was due via CNC's 'auto-drafting' the amount from Plaintiffs' bank account.

56. CNC mistakenly linked the January 9, 2025, reversal of debit to the December 2, 2024, mortgage payment, instead of correctly linking it to the January 2, 2025, payment for which it was made.

57. Plaintiffs, after having their credit scores detrimentally impacted due to this mistake, notified CNC and requested it correct the mistake.

58. Plaintiffs provided documentation establishing, without doubt, that they had made their December payment timely and that CNC had applied the refund incorrectly.

59. CNC unjustifiably refused to correct the mistake and continued to show Plaintiffs' December payment as being past due until shortly after Plaintiffs threatened legal action, and over a month after Plaintiffs initially raised this dispute.

60. Upon information and belief, CNC is continuing to report to CRA Defendants the delinquency status of Plaintiffs' 2025 mortgage payments as incorrectly relating back to the date of the December 2024 payment.

61. CNC's conduct described herein constitutes violations of the RMLA §§ 1322.40(B), (C), (E) and (I).

62. As a direct and proximate result of CNC's violations of the RMLA, Plaintiffs have suffered damages in an amount to be determined at trial, no less than all compensation paid directly and indirectly to a registrant or mortgage loan originator from any source, plus reasonable attorney's fees and court costs, and in any event exceeding $25,000.00.

**COUNT IV:**
**DEFAMATION**
**(against CNC only)**

63. Plaintiffs incorporate all the foregoing allegations as if fully rewritten here.

64. CNC reported to several CRAs that Plaintiffs are in default on their mortgage payment obligations.

65. CNC knew or had reason to know that this information is false.

66. CNC continues to misreport to CRA Defendants the delinquency statuses and dates of Plaintiffs' 2025 payments as relating back to the December 2024 payment.

67. CNC knows or has reason to know that this information is false and misleading.

68. CNC, when furnished with dispositive evidence of its mistake, engaged in such reckless disregard of the accuracy of its information as to constitute malice towards, or willful intent to injure, Plaintiffs.

69. CNC's described conduct herein constitutes defamation.

70. As a direct and proximate result of CNC's defamation of Plaintiffs, Plaintiffs have suffered harm to their reputation, including their credit reputation, the loss of favorable loan terms on an automobile, the loss of a promotion opportunity at work, stress, anxiety, and embarrassment, and have suffered damages in an amount to be determined at trial, but exceeding $25,000.00.

**COUNT V:**
**VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT,**
**12 U.S.C. §§ 2601-2617, and Regulation X, 12 CFR § 1024.35**
**(against CNC only)**

71. Plaintiffs incorporate all the foregoing allegations as if fully rewritten here.

72. CNC is a "servicer" pursuant to the Real Estate Settlement Procedures Act ("RESPA") as implemented through Regulation X ("Reg X"). 12 C.F.R. § 1024.2(b)(26).

73. Plaintiffs are "borrowers" pursuant to RESPA as implemented through Reg X.

74. Plaintiffs' March 27, 2025, written communication to CNC constitutes a "Notice of Error" as defined and required by 12 C.F.R. § 1024.35(a). A copy of this written communication is attached hereto as Exhibit "B."

75. CNC's erroneous application of the January 9, 2025, refund to the December 2024 payment, incorrectly resulting in the latter being reported as delinquent, constitutes an "error," as defined in 12 C.F.R. § 1024.35(b).

9

76. CNC failed to conduct an adequate investigation and to provide a sufficient response to Plaintiffs, as required by 12 C.F.R. § 1024.35(e)(1), within the time limit prescribed in § 1024.35(e)(3).

77. CNC did not correct the December 2024 payment information until 49 days, including 34 business days, after receiving the notice of error.

78. CNC continues to report incorrect information about Plaintiffs' mortgage loan by reporting delinquency statuses and dates for payments made in 2025 as relating back to the December 2024 payment.

79. CNC's conduct as described herein constitutes violations of 12 U.S.C. § 2605(e) and (f), and its implementing regulation, 12 C.F.R. § 1024.35(b).

80. As a direct and proximate result of CNC's described violations, Plaintiffs have suffered actual damages in amount to be determined at trial, but in any event exceeding $25,000.00.

81. Pursuant to 12 U.S.C. § 2605(f)(3), Plaintiffs are entitled to, in addition to actual damages, the cost of the action, including attorney's fees, as the court deems reasonable.

**WHEREFORE,** Plaintiffs demand the following relief:

A. Declaratory and injunctive relief requiring the CRA Defendants to correct Plaintiffs' consumer credit reports;

B. Compensatory damages to be determined at trial, but exceeding $25,000.00, or statutory damages as provided by 15 U.S.C. § 1681n, whichever is greater, against all Defendants for Count I;

C. Compensatory damages to be determined at trial, but exceeding $25,000.00, against all Defendants for Count II;

D.  Compensatory damages to be determined at trial, in an amount no less than all compensation paid directly and indirectly to a registrant or mortgage loan originator from any source, against CNC for Count III;

E.  Compensatory damages to be determined at trial, but exceeding $25,000.00, against CNC for Count IV;

F.  Compensatory damages to be determined at trial, but exceeding $25,000.00, against CNC for Count V;

G.  Punitive damages as against all Defendants in an amount to be determined at trial;

H.  The costs of this action, together with reasonable attorney's fees; and

I.  Such other relief as this Court deems proper.

Respectfully submitted,

 */s/ Rick D. DeBlasis*
Rick D. DeBlasis   (Ohio Reg. #0012992)
DEBLASIS LAW FIRM, LLC
201 East 5th Street, Suite 800
Cincinnati, OH  45202
PH:  513-416-4020
EM:  Rick@DeBlasisLaw.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Amended Complaint has been electronically filed on the 11th day of September, 2025.  Notice of this filing will be sent to the parties, all of whom are represented by counsel herein, by operation of the Court's electronic filing system.

 */s/ Rick D. DeBlasis*
Rick D. DeBlasis   (Ohio Reg. #0012992)

11



**Click n' Close, Inc.**

15301 SPECTRUM DRIVE SUITE 405
Addison, TX 75001

**12/03/2024**

**DANIEL COSMAH**
**MICHELLE COSMAH**
**3404 WARD WAY**
**OXFORD, OH 45056**

Loan Number ███████████

     3404 WARD WAY
     OXFORD, OH 45056

Dear Borrower(s):

Based on a careful review of the information you provided, we are happy to confirm you are approved to enter a Trial Modification Plan. It is important that you read this information in its entirety to completely understand the actions you need to take to successfully modify your mortgage.

**To Accept This Offer**

Please sign and return a copy of this agreement to the following address by **12/17/2024. If you sign and return this agreement by 12/17/2024 indicating you accept this offer**, then your loan will not be referred to foreclosure or foreclosure will be suspended if your loan has already been referred (**if applicable**). **However, if you do not sign and return this agreement by 12/17/2024,** the foreclosure proceedings may continue (**if applicable**).

Please submit the signed agreement via:

**Mail:**
Click n' Close, Inc.
Attn: Loss Mitigation Department
15301 SPECTRUM DRIVE SUITE 405
Addison, TX 75001

**Fax:**
1-866-738-9573

**Email:**

**Website:**

lossmitigation@clicknclose.com                    www.clicknclose.com

## Make Trial Period Payments

To successfully complete the trial period, the required trial period payments listed in the table below must be made:



- **First Payment:$2845.00 by 01/01/2025**
- **Second Payment:$2845.00 by 02/01/2025**
- **Third Payment:$2845.00 by 03/01/2025**

The total amount due under the plan is **$8535.00** with the first trial payment due **01/01/2025** and final trial payment due **03/01/2025**. Failure to pay as agreed is deemed a denial of the terms of this offer and your loan may be referred to foreclosure.

**Once all trial period payments have been made, payments must continue to be made _monthly_ in the trial amount according to this agreement until the permanent loan modification has been processed.**

**To make your trial period payments**, please contact us directly at 1-888-845-6535. Our office is open Monday through Friday, 8:30 AM to 5 PM CST.

## GNMA II/FHA Foreclosure Alternatives

You were evaluated for mortgage payment assistance based on the eligibility requirements of VA the insurer of your mortgage loan.  Borrowers must meet eligibility requirements to be eligible for foreclosure alternatives.

## Next Steps

- It is important that you thoroughly review the Frequently Asked Questions and Additional Trial Period Plan Information and Legal Notices information attached.

- Once we have received each of the payments above by their due dates, you have submitted two signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.

- If you are eligible and qualify for assistance from your state Housing Finance Agency (HFA) using federal Hardest Hit Funds to pay down a portion of the

unpaid principal balance of your mortgage loan (HFA Funds), then we must receive such HFA Funds from the HFA prior to modifying your mortgage. If we do not receive such HFA Funds and you otherwise remain eligible for a modification, then we may proceed with modifying your mortgage without HFA Funds.

- **We must receive each payment in the month in which it is due in the exact amount. If you miss a payment or do not fulfill any other terms of your trial period, then this offer will end, and the mortgage will not be modified.**

If you have any questions about this information, your trial period payments, or our mortgage modification requirements, please contact us at 1-888-845-6535.
If you feel that you cannot afford the trial period payments shown above but want to remain in your home, or if you have decided to leave your home, please contact me to discuss alternatives to foreclosure.

*Please note that except for your monthly mortgage payment amount during the trial period, the terms of your existing note and mortgage remain in effect and unchanged during the trial period.

I/We agree to this agreement and will make the payments on or before the scheduled dates mentioned.

Signed _____  Date __12/3/24__

Signed _____  Date __12/3/24__

## Frequently Asked Questions

### Q: What else should I know about this offer?

- Your state Housing Finance Agency (HFA) may be participating in a program using federal Hardest Hit Funds to assist qualified homeowners to pay down a portion of the unpaid principal balance of their mortgage loans (HFA Program). If you are eligible and qualify for the HFA Program, and you make your trial period payments on time, upon our receipt of the HFA Funds, we will apply such funds to the amount you owe on your mortgage loan. If we do not receive the HFA Funds and you otherwise qualify for a modification, we may offer you a modification without HFA Funds. **There could be income tax consequences related to payment of your debt obligation**

**by a third party. As a result, you are advised to seek guidance from a tax professional to discuss potential tax consequences.**

- If you make your new trial period payments timely, **foreclosure sale will not be pursued.**

- If the loan is modified, we will waive all unpaid late charges

- **Credit Reporting:** We will continue to report the delinquency status of the loan to credit reporting agencies as well as your entry into a trial period plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association Requirements. **CREDIT SCORING COMPANIES GENERALLY CONSIDER THE ENTRY INTO A PLAN WITH REDUCED PAYMENTS AS AN INCREASED CREDIT RISK. AS A RESULT, ENTERING INTO A TRIAL PERIOD PLAN MAY ADVERSELY AFFECT YOUR CREDIT SCORE, PARTICULARLY IF YOU ARE CURRENT ON YOUR MORTGAGE OR OTHERWISE HAVE A GOOD CREDIT SCORE.** For more information about your credit score, go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

### Q: Why is there a trial period?

- The trial period offers you immediate payment relief and gives you time to make sure you can manage the lower monthly mortgage payment. The trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during the trial period.

### Q: When will I know if my loan can be modified permanently and how the modified loan balance will be determined?

- Once you make all the trial period payments on time and return to us two copies of a modification agreement with your signature, we will sign and send one copy back to you so that you will have a fully executed modification agreement detailing the terms of the modified loan. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents. It should not significantly change the amount of your modified mortgage payment.

- If you are eligible and qualify for the HFA Program, after making all of your trial period payments on time, and upon our receipt of the HFA Funds, we will apply such funds first to reduce accrued and unpaid interest on your mortgage loan and any other past due amounts advanced by us under the terms of the mortgage, then to pay down a portion of the unpaid principal balance of the mortgage loan. If we do not receive the HFA Funds, and you

otherwise qualify for a modification, we may offer you a modification without HFA Funds.

**Q: Are there any incentives that I may qualify for if I am current with my new payments?**

- No. Borrower incentive compensation is only available to borrowers whose loans qualified for a permanent modification under the federal Home Affordable Modification Program (HAMP). Your loan did not qualify for a modification under HAMP.

**Q: Will my interest rate and principal and interest payment be fixed after my loan is permanently modified?**

- Once your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage, unless the modification agreement includes a step-rate adjustment. Your new monthly payment will include an escrow for property taxes, hazard insurance, and other escrowed expenses. If the cost of your homeowners' insurance, property tax assessment, or other escrowed expenses increases, your monthly payment will increase as well.

### Additional Trial Period Plan Information and Legal Notices

**We will not proceed with foreclosure sale during the trial period, provided you are complying with the terms of the trial period plan.**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the plan or do not qualify for a permanent modification.

- You agree that the servicer will hold the trial period payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment. You also agree that the servicer will not pay you interest on the amounts held in the account. If any money is left in this account at the end of the trial period plan and you qualify for a loan modification, those funds will be deducted from amounts that would otherwise be added to your modified principal balance.

- The servicer's acceptance and posting of your payment during the trial period will not be deemed a waiver of the acceleration of your loan (or foreclosure actions) and related activities and shall not constitute a cure of the default unless such payments are sufficient to completely cure the entire default amount of your loan.

**If your monthly payment did not include escrows for taxes and insurance, escrows for taxes and insurance are now required to be included in the trial period payment amount:**

- You agree that any prior waiver allowing you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account.

**Your current loan documents remain in effect; however, you may make the trial period payment instead of the payment required per your loan documents:**

- You agree that all terms and provisions of your current mortgage note, and mortgage security remain in full force and effect, and you will comply with those terms. You also agree that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

- After all trial period payments are made on time, as outlined in this letter, your mortgage will be permanently modified (your existing loan and loan requirements remain in effect and unchanged during the trial period).

- **If each payment is not received by us in the month in which it is due, your loan will no longer be eligible for a modification, and the loan will not be modified. If the last trial payment is made after the fifteenth of the month in which it is due, we may elect to extend the trial period plan by an additional month.**

## Right to Appeal

If the property address attached to the loan is your primary residence, you may have the right to appeal determination of the trial period plan(s) or loan modification. If you would like to submit an appeal, we must receive your appeal in writing at the address provided below no later than **12/17/2024** and it must state that you are requesting an appeal of our decision. You must include in the appeal your name, property address, and mortgage loan number. You may also specify the reasons for your appeal and provide any supporting documentation. **Your right to appeal expires 12/17/2024. Any appeal requests or documentation received after 12/17/2024 may not be considered.**

If you elect to appeal, we will provide you with written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final and not subject to further appeal.

If you elect to appeal, you do not have to make the full mortgage payment amount until resolution of the appeal. However, the failure to make such payments may negatively affect your credit rating. If we determine on appeal that your loan is eligible for a trial period plan or loan modification, we will send you an offer for that trial period plan or loan modification. In that case, you may choose to make the full mortgage payment amount (including any delinquent amounts and late charges that have accrued during the appeal process), or you may notify us of your acceptance of the new trial period plan payment. Please notify us of your acceptance of the new trial period plan no later than 14 calendar days from the date of the appeal decision. If you accept the new trial period plan, please notify us by calling 1-888-845-6535 or by submitting written notification to the address below:

Click n' Close, Inc.
15301 SPECTRUM DRIVE SUITE 405
Addison, TX 75001

If you wait until after receiving our appeal decision before making the payment amount described above, your loan will become further delinquent. During the appeal, your mortgage loan will continue to accrue any unpaid interest or other unpaid amounts, such as escrows for taxes and insurance. These unpaid amounts will be added to the total amount required to bring the loan current.

We appreciate your business. If you have additional questions, please contact us directly at        1-888-845-6535. Our office is open Monday through Friday, 8:30 AM to 5 PM CST.

Sincerely,

Click n' Close, Inc.
**Loss Mitigation Department**
15301 SPECTRUM DRIVE SUITE 405
Addison, TX 75001

To provide us with a Notice of Error about the servicing of your loan, or make a Request for Information about the servicing of your loan, please contact us at as follows:

Mailing Address:

Click n' Close, Inc.
Loss Mitigation Department
15301 SPECTRUM DRIVE SUITE 405
Addison, TX 75001

Federal law requires us to advise you that we are a debt collector and that this is an attempt to collect debt. Any information obtained may be used for that purpose. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.

**Notice to Customers:** We may report information about your mortgage account to credit bureaus. Late-payments, missed payments, or other defaults on your mortgage may be reflected in your credit report.

recipient, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply email and immediately delete this message from your system. This message and any attachments may contain information that is confidential, privileged or exempt from disclosure. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. Message transmission is not guaranteed to be secure or free of software viruses.

>
>
>
>
>



> From: dacosmah@gmail.com
>
> Sent: Thursday, March 27, 2025 10:03 PM
>
> To: customerservice@clicknclose.com
>
> Subject: Cosmah-█████████
>
> I spoke with a CSR regarding delinquency, which was reported to Michelle and my credit reports (Equifax, TransUnion, Experian). I was informed that we did not pay the Dec 2024 payment, which is why it was reported. As I explained to her, the Dec payment was auto-deducted on 12/2/24. The Jan payment was supposed to be the first of our three modification payments, but Click n Close took out our regular amount. That was refunded to us on 1/9/25, and the new amount was taken out on 1/13/25. I would like all three credit bureaus, as mentioned above, updated to remove the delinquent reporting immediately. I am in the process of purchasing a car, and this negative mark dropped my score by 91 points, resulting in a 9% increase in my rate. Please supply confirmation in writing that this has been taken care of at your earliest convenience so I can supply it to my lender.
>
>
>
> Daniel & Michelle Cosmah
>
> ████████████
>
>
>
> Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed to the destination. If suspicious content is detected, you will see a warning.
>